**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DAWN COBB,**

                               **Plaintiff,**

    v.                                                         5:15-CV-01432

**CAROLYN W. COLVIN,**
**Acting Commissioner of**
**Social Security,**

                               **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I. INTRODUCTION**

      Dawn Cobb ("Plaintiff") brings this action pursuant to § 205(g) of the Social Security Act ("SSA"), 42 U.S.C. § 405(g), to review a final determination by the Commissioner of Social Security ("Commissioner") denying her application for benefits. Plaintiff argues that the Commissioner's decision must be reversed and the matter remanded because: (1) the ALJ erred at step two in assessing the severity of Plaintiff's impairments; (2) the RFC determination is not supported by substantial evidence; (3) the credibility determination is not supported by substantial evidence; and (4) the step five determination is not supported by substantial evidence. The Commissioner argues that substantial evidence supports the Commissioner's decision, and that the Commissioner applied the correct legal standards.

      Pursuant to Northern District of New York General Order No. 8, the Court proceeds

1

as if both parties had accompanied their briefs with a motion for judgment on the pleadings. For the reasons that follow, Plaintiff's motion is granted in part and denied in part, Defendant's motion is denied, and the decision of the Commissioner is reversed and the matter remanded for further determination consistent with this decision.

## II.  PROCEDURAL HISTORY

On August 15, 2012, Dawn Cobb ("Plaintiff") protectively filed for a period of disability and disability insurance benefits as well as Supplemental Security Income ("SSI") alleging disability beginning November 14, 2011 due to anxiety disorder, arthritis in both knees, hypothyroidism, learning problems, and depression.  The applications were initially denied. T. 94, 95, 96-101.  Plaintiff requested a hearing before an administrative law judge. T. 104-06.  Plaintiff appeared and testified at a hearing held on February 12, 2014, in Syracuse, N.Y.  A supplemental hearing took place on April 17, 2014, also in Syracuse, N.Y., at which Roxanne Benoit, an impartial vocational expert, provided testimony.  Timothy J. McMahon, Esq., an attorney, represented plaintiff.  On May 22, 2014, Administrative Law Judge ("ALJ") Elizabeth W. Koennecke issued a decision finding that Plaintiff was not disabled. T. 8-21.  This decision became the final decision of the Commissioner on October 5, 2015, when the Appeals Council denied plaintiff's request for review.  T. 1-5.  This action followed.

## III.  FACTS

The parties do not dispute the underlying facts of this case as set forth by plaintiff in her Memorandum of Law (Pl. Mem.) at 3-9, and by the ALJ in her decision, T. 11, 13-20. Accordingly, the Court assumes familiarity with these facts and will set forth only those facts

2

material to the parties' arguments.

**IV.    THE ADMINISTRATIVE LAW JUDGE'S DECISION**

Plaintiff alleged disability since November 14, 2011, due to anxiety, depression, learning problems, hypothyroidism, and arthritis of both knees. T. 207. The ALJ found that plaintiff met the insured status requirements of the Act through June 30, 2016. T. 13. At step one of the sequential evaluation, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 14, 2011. T. 13.  At step two, the ALJ found that plaintiff had severe impairments, which were mild degenerative disc disease of the lumbar spine, and a mental impairment, variously characterized. Tr. 14. The ALJ also found that plaintiff's carpal tunnel syndrome, for which she underwent surgery, was expected to resolve in less than twelve months, and that her knee condition and hypothyroidism were not medically determinable impairments.  T. 14.  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  T. 14-15.

The ALJ then found that plaintiff retained the residual functional capacity (RFC) to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with exceptions.  T. 17-19.  The exceptions were that plaintiff could only occasionally kneel and bend; mentally, she was limited to understanding and following only simple instructions and directions; performing simple tasks with supervision and independently; maintaining attention/concentration for simple tasks; regularly attending to a routine and maintaining a schedule; relating and interacting appropriately with others in carrying out simple and repetitive tasks; and handling reasonable levels of stress, defined as performing work with occasional decision making related to the performance of simple tasks involving

3

goal-oriented work, rather than work involving a production rate pace. T. 17.

At step four, the ALJ found that plaintiff was unable to perform her past relevant work as an office cleaner and food assembler. T. 19. At step five, the ALJ used the Medical-Vocational Rules 202.14 as a framework for decision-making and relied on vocational expert evidence to conclude that there were a significant number of other jobs that plaintiff could perform. T. 19-20. Specifically, the ALJ found that plaintiff could perform the duties of an information clerk, laundry sorter, and cashier/toll collector. T. 19-20. Therefore, the ALJ found that plaintiff was not disabled within the meaning of the Act. T. 20-21. On October 5, 2015, the Appeals Council denied review, making the ALJ's decision the final Agency decision. T. 1-5.

## V. STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. *See* 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998); *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990); *Shane v. Chater*, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. *See Tejada*, 167 F.3d at 773; *Balsamo*, 142 F.3d at 79; *Cruz*, 912 F.2d at 11; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Perez*, 77 F.3d at 46; *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.

4

1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted). In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. *See Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997)(citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" *Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990)(quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

## VI. DISCUSSION

### a. Step Two Determination

Plaintiff argues that the ALJ erred at step two in assessing the severity of her impairments arising from her learning problems, her knee issues, and her bilateral wrist problems. Plaintiff contends that the step two severity analysis is not supported by substantial evidence, and by failing to properly address the severity of the afore-mentioned impairments, the ALJ committed harmful error that affected the ALJ's analysis at

5

subsequent steps, including the finding at step five that plaintiff can perform other work. Accordingly, plaintiff contends that this matter should be remanded for further administrative proceedings.

The Commissioner counters that the ALJ found at step two that plaintiff had the severe impairments of mild degenerative disc disease of the lumbar spine and variously characterized mental impairments, and thus proceeded with the sequential evaluation process. The Commissioner argues that all of plaintiff's conditions - severe or otherwise - were analyzed in the context of plaintiff's ability to perform work, and therefore, the ALJ did not commit harmful error at step 2.

"At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities." *Hamilton v. Colvin*, 8 F. Supp. 3d 232, 239 (N.D.N.Y. 2013)(citing 20 C.F.R. §§ 404.1520(c) , 416.920(c) ). "The following are examples of 'basic work activities': 'walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations.'" *Id.* (quoting *Gibbs v. Astrue*, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008) and citing 20 C.F.R. § 404.1521(b)(1)-(5)). It is the claimant's burden to show at step two that she has a "severe impairment." 20 C.F.R. §§ 404.1520(c) , 416.920(c) ; *see Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).[1]

---

[1]("If the process ends at step two, the burden of proof never shifts to the [Commissioner]. ... It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.")

> "Impairments" are "anatomical, physiological, or psychological abnormalities... demonstrable by medically acceptable clinical and laboratory techniques." 20 C.F.R. §§ 404.1508, 416.908. "Severe" impairments are those that "significantly limit" physical or mental abilities to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); *see also* Social Security Ruling ("SSR") 85–28, Titles II and XVI: Medical Impairments That Are Not Severe, 1985 WL 56856, at *3–4 (S.S.A. 1985). "The phrase 'significantly limits' is not synonymous with 'disability.' Rather, it serves to 'screen out *de minimis* claims.'" *Showers v. Colvin*, No. 3:13-CV-1147(GLS), 2015 WL 1383819, at *4 (N.D.N.Y. Mar. 25, 2015) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). Consequently, "[a] finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality'...[with]...'no more than a minimal effect on an individual's ability to work.' " *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)).

*Cordero v. Colvin*, 2016 WL 6829646, at *2 (W.D.N.Y. Nov. 21, 2016).

"[T]he omission of an impairment [by the ALJ] at step two does not in and of itself require remand and may be deemed harmless error." *Rye v. Colvin*, 2016 WL 632242, at *3 (D. Vt. Feb. 17, 2016)(citing *Pompa v. Comm'r of Soc. Sec.*, 73 Fed.Appx. 801, 803 (6th Cir. 2003)[2] and *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)[3]). "This is particularly true where the disability analysis continued and the ALJ considered all of the claimant's impairments in combination in his RFC determination." *Id.* (citing *Reices-Colon v. Astrue*, 523 Fed. Appx. 796, 798 (2d Cir. 2013)[4]). "However, where [an] omitted impairment was

---

[2]("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.")

[3](applying harmless error standard in social security context, and holding that, "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration")

[4](finding alleged step-two error harmless because ALJ considered impairments during subsequent steps)

7

not accounted for in the ALJ's RFC determination, or in other words, where the ALJ's step-two error prejudiced the claimant at later steps in the sequential evaluation process, remand is required." *Southgate v. Colvin*, 2015 WL 6510412, at *6 (D. Vt. Oct. 28, 2015)(citing, *inter alia*, *Hamilton*, 8 F. Supp.3d at 242[5]).

The record indicates that in December 2012, plaintiff complained to her medical provider of poorly controlled wrist pain with tingling and numbness in all fingers. T. 403. She was assessed with Carpal Tunnel Syndrome and given a left wrist splint to wear at night and during the day for at least 8 hours. T. 407. Plaintiff continued with carpal tunnel symptoms in September and October 2013. T. 420, 424. She was referred to orthopedic care for possible carpal tunnel release and encouraged to continue with Gabapentin and wrist splints. T. 427.

In December 2013, plaintiff presented to Syracuse Orthopedic Specialists, PC, and complained of pain in the bilateral hands and wrists with numbness and tingling. T. 356. The pain bothered her at nighttime and was no longer relieved with bracing. T. 356. She had paresthesias to the median nerve distribution with carpal tunnel compression test. T. 357. Dr. J. Alan Lemley, M.D., assessed Carpal Tunnel Syndrome and plans were made for carpal tunnel release. T. 357- 58.

Also in December 2013, treating physician Dr. Vivien L. RedEye, M.D., provided a physical medical source statement indicating that plaintiff could only frequently lift and/or carry less than 10 pounds, stand and/or walk less than 2 hours in an 8-hour workday, sit for less than about 6 hours in an 8-hour workday, and was limited in pushing and/or pulling with

---

[5](ALJ's step-two error not harmless where there was "no indication in the decision that the ALJ considered the impact of Plaintiff's carpal tunnel syndrome on his ability to perform work-related functions.")

her upper extremities because of her "chronic LBP"[6] and carpal tunnel syndrome. T. 360-61. Dr. RedEye also opined that Plaintiff was occasionally limited in reaching in all directions (including overhead), in handling (gross manipulation), and in fingering (fine manipulation), and was constantly limited in feeling (skin receptors), all due to her "carpal syndrome as assessed by EMG testing." T. 362.

Plaintiff underwent a left carpal tunnel release in January 2014, but had not undergone such a procedure for her right wrist at the time of the hearing. T. 37-38, 45, 444.

At her hearing, plaintiff testified in response to the ALJ's question whether she had problems with her hands: "Yeah. Carpal tunnel in this hand. I just had this hand done and they said it was really bad. Then this hand is like bad, but not as bad as this one was. So —" T. 37. Plaintiff clarified that her reference to having her hand "done" meant she had surgery on her left hand. When asked by the ALJ what symptoms she had before surgery, plaintiff indicated that she could not feel her fingers, and indicated that they were "like real numb and cold all the time." T. 38. Plaintiff further testified that "even now, still, I drop stuff constantly. Like I could have like a glass in my hand, it would just like fall out of my hand and smash all over the floor. So I drop a lot of stuff." T. 38. When the ALJ asked if she had any difficulty with the grip strength or manipulation, plaintiff responded: "All that stuff. I even just ---- like if I'm at the store and I'm trying to get money out I, the clerks, they'll be antsy with me because it takes me a minute to manipulate the money to give it to them." T. 38. After plaintiff's attorney finished questioning plaintiff, the ALJ returned to the issue of plaintiff's hand problems, asking whether plaintiff was right-handed or left-handed. T. 45.

---

[6]The Court presumes that the acronym "LBP" refers to low back pain.

9

Plaintiff clarified that she was right-handed and that she had surgery on her left hand. T. 45. When the ALJ asked plaintiff what was "going on with the right hand," plaintiff responded that she was "due" to get surgery on the right hand but wanted the left hand to heal first. T. 45. Plaintiff further clarified that her left hand surgery was done on January 16, 2014. T. 45.

At step two, the ALJ wrote:

The record also has a mention of carpal tunnel syndrome. However, the claimant underwent a left carpal tunnel release in January 2014 and this issue would be expected to resolve in less than twelve months. In fact, the claimant has presented no objective evidence of any ongoing limitations.

T. 14.

The Court agrees with plaintiff that the ALJ's conclusion that any issue related to plaintiff's left carpal tunnel release in January 2014 "would be expected to resolve in less than twelve months" is not based on or supported by the medical evidence of record and, therefore, constitutes the ALJ's own lay opinion about the effects of plaintiff's Carpal Tunnel Syndrome.

Moreover, the ALJ's conclusion that plaintiff has presented no objective evidence of ongoing limitations relating to Carpal Tunnel Syndrome is contradicted by the medical record. Plaintiff's problems with bilateral wrist pain dated back to 2012, and thereafter Carpal Tunnel Syndrome was diagnosed by EMG testing with plaintiff's physician recommending that she have carpal tunnel release on both wrists. Further, plaintiff's treating physician, Dr. RedEye, opined in December 2013 that plaintiff's carpal syndrome played a part in limiting her ability to frequently lift and/or carry less than 10 pounds, to push and/or pull with her upper extremities, and was the sole cause of plaintiff's limitations in

10

reaching, handling, fingering, and feeling. Although Dr. RedEye's opinion was rendered before plaintiff underwent left hand carpal tunnel release, the restrictions to the right hand presumably continued up to the time of the ALJ's decision. In fact, plaintiff testified that her Carpal Tunnel Syndrome continued to have significant limitations on her ability to hold and handle objects.

While the ALJ gave Dr. RedEye's opinion very little weight because Dr. RedEye had apparently modified a portion of her assessment based on plaintiff's complaint about the assessment's limitations, *see* T. 18,[7] the modification appears to apply only to limitations on plaintiff's ability to stand and/or walk and sit for an extended periods of a workday. *See* T. 360-61, 397. Because there is no indication that Dr. RedEye modified her opinion regarding plaintiff's ability to use your hands for work-related activities, and because the limitations in this regard were based upon objective evidence (EMG testing), there is a basis to reject the limited weight accorded the treating physician's opinion regarding the effects of plaintiff's Carpal Tunnel Syndrome. *Compare* 20 C.F.R. 404.1527(c)(2)[8] *with Pena ex rel. E.R. v.*

---

[7] The ALJ wrote:

Dr. RedEye's opinion regarding the claimant's physical abilities is given very little weight (Exhibit 17F). She opined the claimant can lift/carry less than ten pounds; stand/walk less than two hours in an eight-hour workday; sit less than six hours in an eight-hour workday; and occasionally balance and stoop but never perform other postural activities (Exhibit 17F). This opinion is given very little weight because the claimant complained about an assessment that Dr. RedEye completed and requested that forms be changed to reflect her subjective complaints (Exhibit 18F, p.34). Since this is essentially the claimant's opinion and is not based on objective evidence, it cannot be given more weight.

T. 18.

[8](Normally, an ALJ is required to find a treating physician's opinion to be controlling when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record.")

11

*Astrue*, 2013 WL 1210932, at *15 (E.D.N.Y. March 25, 2013);[9] *see also Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).[10] The failure to address the weight provided to those portions of Dr. RedEye's opinion that were not "essentially the claimant's opinion," and that were based on objective evidence, provides a basis for remand. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999).[11]

Further, the ALJ "has an 'affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel' to determine upon what information the treating source was basing h[er] opinions.'" *Hamilton*, 8 F. Supp. 3d at 241 (quoting *Colegrove v. Comm'r of Soc. Sec.*, 399 F. Supp.2d 185, 196 (W.D.N.Y. 2005) and citing 20 C.F.R. §§ 404.1212(e)(1), 416.912(e)(1)[12]). Failure to re-contact is error. *Id.*; *see Taylor v. Astrue*, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008).[13] Here, the ALJ should have re-contacted Dr. RedEye to allow her to explain whether her opinion, either in whole or in part, was "essentially the claimant's opinion," and whether some or all of the opinion was based on objective evidence.

---

[9]("On the other hand, in situations where 'the treating physician issued opinions that [were] not consistent with other substantial evidence in the record, such as the opinion of other medical experts,' the treating physician's opinion 'is not afforded controlling weight.'")(quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004))

[10]("'[T]o override the opinion of the treating physician, we have held that the ALJ must consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist.'") (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013))

[11]("Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand.")

[12]("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.")

[13] (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence")

Lastly, the Court finds no indication that the ALJ considered the impact of Plaintiff's Carpal Tunnel Syndrome on her ability to perform work-related functions. Rather, it appears the ALJ dismissed the diagnosis after concluding that issues related to the condition "would be expected to resolve in less than twelve months" because plaintiff underwent a left carpal tunnel release in January 2014. As indicated above, the ALJ's conclusion in this regard is not based upon medical evidence, and even if the conclusion was medically supported, it does not account for the fact that plaintiff had the same condition in her right hand yet did not undergo a right carpal tunnel release. The failure of the ALJ to consider plaintiff's hand and wrist condition is significant because the ALJ found that plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with exceptions, but none of the exceptions related to manipulative limitations of the hands or fingers. Because the ALJ does not include any limitations in plaintiff's RFC pertaining to her ability to use her hands and fingers for work-related activities, and because the ALJ found that plaintiff could perform jobs that would seemingly require various degrees of finger and hand dexterity (information clerk, laundry sorter, cashier/toll collector), *see e.g. Moore v. Colvin*, 2015 WL 9319461, at *6 (E.D. Cal. Dec. 23, 2015),[14] the ALJ's failure to fully assess the severity of plaintiff's bilateral wrist impairments

---

[14]("The ALJ asked the VE to consider a hypothetical individual who had limitations similar to those assessed by Dr. Rios. (Doc. 16-3 at 55). Specifically, the VE considered an individual who "had a maximum standing and walking capacity up to six hours; maximum sitting capacity up to six hours; [and did] not require an assistive device." (*Id.*) The hypothetical person was also able to 'lift 20 pounds occasionally and 10 pounds frequently,' and was 'capable of frequent reaching and handling and occasional feeling and fingering.' (*Id.*) Further, the ALJ said the 'individual [was] capable of performing occasional ... climbing, kneeling, crouching, crawling, and frequent balancing and stooping.' (*Id.*) The VE believed there were not any jobs in the national economy an individual with these limitations could perform 'based upon the manipulative limitations.' (*Id.*) However, if the person did not have any manipulative limitations, the VE believed the person would be able to perform light work as a cashier, DOT 211.462-010; fast food worker, DOT 311.472-010; and cleaner, DOT 323.687-014.")

cannot be deemed harmless. *See Hamilton*, 8 F. Supp. 3d at 242 (N.D.N.Y. 2013);[15] *Golubchick v. Barnhart*, 2004 WL 1790188, at *9 (E.D.N.Y. Aug. 9, 2004).[16]

While there may be, as the Commissioner argues, substantial evidence supporting the ALJ's determination that plaintiff's Carpal Tunnel Syndrome was not a severe impairment and does not affect plaintiff's ability to perform work, the ALJ's failure to address this issue prevents adequate review. Therefore, the matter must be remanded. Because the matter is remanded for a determination at step two regarding the severity of plaintiff's Carpal Tunnel Syndrome, and because the ALJ's decision in this regard on remand may impact plaintiff's RFC and, ultimately, her ability to perform work, the Court finds that addressing plaintiff's other bases for appeal is premature. Thus, plaintiff's motion for judgment on the pleadings is granted to the extent that the Commissioner's decision is reversed and the matter is remanded for further determination relative to plaintiff's Carpal Tunnel Syndrome. The motion is denied without prejudice to renewal in all the respects.

---

[15]("[I]n the present case, this Court finds no indication in the decision that the ALJ considered the impact of Plaintiff's carpal tunnel syndrome on his ability to perform work-related functions. Rather, it appears the ALJ dismissed the diagnosis after concluding the impairment was non-severe. This is significant because the ALJ found that Plaintiff retained the RFC to perform the full range of sedentary work (T at 14) and "[m]ost unskilled sedentary jobs require good use of both hands and the fingers; *i.e.*, bilateral manual dexterity." SSR 96–9p. "Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." *Id.* (emphasis original).")

[16]("[T]he ALJ clearly erred in claiming that plaintiff had the ability to perform the full range of light work. The ALJ ignored many pieces of medical evidence illustrating that plaintiff suffered from nonexertional limitations on his ability to perform the full range of light work. For example, the ALJ did not discuss possible manipulative limitations caused by numbness in plaintiff's right hand, and erroneously concluded that his nonexertional limitations concerning his mental capacity do not significantly erode his exertional residual functional capacity. Because the ALJ did not properly consider these nonexertional limitations, and the record is not clear as to whether plaintiff's residual functional capacity, age, education, and experience would have allowed him to do any work that existed in significant numbers in the national economy, remand for further administrative proceedings is mandated to determine whether or not plaintiff was disabled between August 10, 1995 and February 3, 1997.")

14

## VII. CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is GRANTED in part and DENIED in part. The motion is granted to the extent that the Commissioner's decision is reversed and the matter is remanded for further determination relative to plaintiff's Carpal Tunnel Syndrome. The motion is denied without prejudice to renewal in all the respects. The Commissioner's motion for judgment on the pleadings is DENIED. The decision of the Commissioner is REVERSED and this case is REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), for a determination consistent with this Decision and Order.

**IT IS SO ORDERED.**

Dated: March 17, 2017

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge